# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-0370V

|  |  |
|---|---|
| SHANNON YODOWITZ, | Chief Special Master Corcoran |
| Petitioner, | Filed: August 23, 2024 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Joseph Douglas Leavitt, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On January 8, 2021, Shannon Yodowitz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on October 23, 2020. Amended Petition at 1, ¶¶ 1, 8. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. ECF

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On November 8, 2022, Petitioner filed a more detailed amended petition. ECF No. 19.

No. 14. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[4] so I ordered briefing on the matter.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount of **$113,354.26**, **representing $110,000.00 for actual pain and suffering, plus** $3,354.26 for past unreimbursable expenses.

## I.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may also consider prior pain and suffering awards to aid in determining the appropriate amount of compensation for pain and suffering in a case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages

---

[4] Less than three months after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Aug. 24, 2023, ECF No. 33.
.

for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case"). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.    Prior SIRVA Compensation Within SPU[6]

### A.    Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2024, 4,138 SPU SIRVA cases have resolved since the inception of SPU ten years before. Compensation has been awarded in the vast majority of cases (4,016), with the remaining 122 cases dismissed.

2,308 of the compensated SPU SIRVA cases were the result of a reasoned ruling that the petitioner was entitled to compensation (as opposed to an informal settlement or

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

concession).[7] In only 235 of these cases, however, was the amount of damages *also* determined by a special master in a reasoned decision.[8] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[9]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[10] Agreement |
|---|---|---|---|---|
| **Total Cases** | *235* | *2,044* | *29* | *1,708* |
| **Lowest** | $35,000.00 | $10,000.00 | $45,000.00 | $2,500.00 |
| **1st Quartile** | $67,910.00 | $60,539.19 | $90,000.00 | $35,000.00 |
| **Median** | **$85,920.03** | **$80,240.98** | **$130,000.00** | **$50,000.00** |
| **3rd Quartile** | $125,066.35 | $109,681.54 | $162,500.00 | $77,500.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

---

[7] The remaining 1,708 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[8] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,044 cases) or stipulation (29 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[9] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[10] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

### B.   Pain and Suffering Awards in Reasoned Decisions

In the 235 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $35,000.00 to $215,000.00, with $85,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[11] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[12]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In eight cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

---

[11] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[12] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

### III.     The Parties' Arguments

Respondent does not dispute any of the expenses claimed by Petitioner. Respondent's Brief Regarding Pain and Suffering ("Opp."), ECF No. 34. And Petitioner has provided adequate documentation regarding the $3,354.26 for past unreimbursed expenses she seeks. Petitioner's Brief on Damages ("Brief") at 9, 16, ECF No. 38; Exhibit 14, ECF No. 37-2. Thus, the only dispute to be resolved is the amount of compensation which should be awarded for Petitioner's past pain and suffering. Petitioner seeks $135,000.00, and Respondent argues for an award of $97,500.00. Brief at 9, 16; Opp. at 1, 6.

To support the amount she seeks, Petitioner emphasizes the "substantial pain and discomfort" she continued to experience more than three years post-vaccination. Brief at 11. Regarding the severity of her symptoms, she argues that the lack of relief obtained from conservative treatment and need for surgery less than one-month post-vaccination illustrates the severity of her initial symptoms. She maintains that "[o]nly after her painful surgery did [she] begin to experience any relief from the excruciating pain she was experiencing." *Id.*

Petitioner favorably compares the facts and circumstances in her case with those suffered by the petitioners in *Nute* and *Rafferty*[13] - decisions featuring past pain and suffering awards of $125,000.00 and $127,500.00, respectively. Brief at 14-15. She insists, however, that she is entitled to a higher award because her pain was more severe both prior to and post-surgery, and because her surgery "was far more complicated and extensive than Ms. Rafferty's." *Id.* at 15. Although she does not discuss them in detail, Petitioner also cites multiple other cases featuring an award of $125,000.00: *Wallace, Dobbins, Robinson, Stokes,* and *Drake.*[14] Brief at 15. Petitioner argues that her "ongoing sequela post-surgery" dictates the past pain and suffering award she seeks - $135,000.00. *Id.* at 16.

Respondent, by contrast, characterizes Petitioner's clinical progression as mild, citing the lack of hospitalization and only one required surgery. Opp. at 4. He insists she

---

[13] *Nute v. Sec'y of Health & Hum. Servs.,* No. 18-0410V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019); *Rafferty v. Sec'y of Health & Hum. Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020).

[14] *Wallace v. Sec'y of Health & Hum. Servs.,* No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); *Dobbins v. Sec'y of Health & Hum. Servs.,* No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018); *Robinson v. Sec'y of Health & Hum. Servs.,* No. 19-0090V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Stokes v. Sec'y of Health & Hum. Servs.,* No. 19-0752V, 2021 WL 6550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021); *Drake v. Sec'y of Health & Hum. Servs.,* No. 18-1747V, 2020 WL 4674105 (Fed. Cl. Spec. Mstr. July 7, 2020).

was "fully recovered" seven months post-vaccination, experienced "a slight reoccurrence of intermittent" pain approximately thirteen months post-vaccination, and was deemed fully recovered six months thereafter. As comparable cases, Respondent proposes *Hunt, Martin,* and *Felland*,[15] in which petitioners received awards ranging from $95,000.00 to $100,000.00. Opp. at 5.

### IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Yodowitz suffered a moderate SIRVA injury for approximately eighteen months. Although her initial pain level was significant (eight out of ten),[16] Petitioner obtained good relief after undergoing extensive arthroscopic surgery only two weeks post-vaccination.[17] Following this surgery, her symptoms occurred primarily during the seven months post-vaccination. Petitioner experienced slow, albeit steady progress, and suffered a slight reoccurrence of symptoms thirteen months post-vaccination. Exhibit 11 at 3; *see* Exhibits 4, 7, 9, 12 (PT records).

During the three months following surgery, Petitioner continued to experience pain as she worked to improve her ROM. Exhibit 4 at 7-38. At a PT session on December 23, 2020, she reported "improved ROM with minimal pain but . . . severe pain at night." Exhibit 4 at 19. By her third post-surgical orthopedic visit on February 8, 2021, Petitioner had stopped taking her prescription pain medication, requiring only Advil (which she

---

[15] *Hunt v. Sec'y of Health & Hum. Servs.,* No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 in pain and suffering); *Martin v. Sec'y of Health & Hum. Servs.,* No. 19-0830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) (awarding $100,0000.00 in pain and suffering); *Felland v. Sec'y of Health & Hum. Servs.,* No. 20-0406V, 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022) (awarding $100,000.00 in pain and suffering).

[16] Petitioner reported this level of pain on October 27, 2020, only four days post-vaccination. Exhibit 6 at 4.

[17] On November 20, 2020, two weeks post-surgery, Petitioner reported minimal to moderate pain that continued to improve. Exhibit 5 at 13.

sometimes forgot) prior to PT and at night. Exhibit 5 at 6. At a PT session two days later, Petitioner's progress was characterized "as being in the 45th percentile of p[atien]t's with the same surgery." *Id.* at 39.

Through May 2, 2021 (approximately six months post-surgery), Petitioner attended 39 PT sessions at two different clinics. Exhibits 4, 7. At her fifth post-surgical orthopedic visit on May 17, 2021, she stated that she didn't think that PT at her current clinic had been as productive,[18] but her "motion and strength continue[d] to improve." Exhibit 8 at 4-5. At that time, she reported only "mild pain with internal rotation." *Id.* at 5. At her last PT session on May 20, 2021, seven months post-vaccination, Petitioner was noted to have met all PT goals and was discharged from PT to a home exercise program. Exhibit 9 at 9.

Petitioner did not require treatment again until November 9, 2021, when she returned to her orthopedist, complaining of "intermittent aching pain and pain with some movements." Exhibit 11 at 4. She attended eight additional PT sessions through April 14, 2022, and has not required further treatment. Exhibit 12. In her sworn declarations,[19] Petitioner maintains that she continues to suffer symptoms related to her SIRVA, and claims that she was informed that she will never regain her full ROM. Exhibit 10 at ¶¶ 14-15; Exhibit 13; *see also* Brief 8-9. However, these assertions are not supported by the medical records or other evidence.

Stressing the severity of her initial left shoulder pain which caused her to undergo surgery only two weeks post-vaccination, Petitioner maintains her case warrants a substantial past pain and suffering award. Brief at 14-15. And I agree that her initial pain levels were severe. Furthermore, I have repeatedly stated that a more significant past pain and suffering award is often warranted in cases, like Petitioner's, in which extensive arthroscopic surgery is required.

However, Petitioner acknowledges that she received relief post-surgery. Brief at 11. Thus, the cases she cites – *Nute* and *Rafferty,* which involved petitioners who suffered severe pain for much longer time periods (nine and five months, respectively) before undergoing surgery, are not appropriate comparisons. *See Nute,* 2019 WL 6125008, at *3; *Rafferty*, 2020 WL 3495956, at *5.

Instead, the *Martin* and *Felland* cases offer better guidance. Although the petitioners in these cases did not benefit from surgery until eight months post-vaccination,

---

[18] Petitioner changed PT clinics after moving to Beacon, New York. Exhibit 8 at 4.

[19] These declarations comport with the requirements of 28 U.S.C.A. § 1746; they were signed under penalty of perjury. Exhibits 11, 13.

the pain they experienced during those months prior to surgery was much milder. *See Martin*, 2021 WL 2350004, at *3-4; *Felland*, 2022 WL 10724100, at *6-7. Thus, they more closely resemble Petitioner's circumstances. Still, given the initial two weeks of severe pain Petitioner experienced, her slower recovery post-surgery, and the reoccurrence of some mild symptoms requiring additional treatment in late 2021, Petitioner's award should be greater.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $110,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[20] I also find that Petitioner is entitled to $3,354.26 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $113,354.26 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[21]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[20] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[21] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.